UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRIAN SMITH,

        Petitioner,               Case No. 1:17-cv-31

v.                                     Honorable Gordon J. Quist

SHAWN BREWER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Brian Smith is incarcerated with the Michigan Department of Corrections at the Parnall Correctional Facility in Jackson, Michigan. Following a jury trial in the Eaton County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b, and two counts of second-degree criminal sexual conduct (CSC-II), Mich. Comp. Laws § 750.520c. On November 7, 2012, the court sentenced Petitioner to concurrent prison terms of 10 to 30 years for each CSC-I conviction and 5 to 15 years for each CSC-II conviction.

On January 11, 2017, the Court received Petitioner's timely habeas corpus petition. The petition raises seven grounds for relief, paraphrased as follows:

    I.    Petitioner was denied his constitutional rights to due process and counsel by the trial judge's nonsubstantive, *ex parte* communication with the jury.

    II.    Petitioner was denied his constitutional rights to due process and counsel by the trial judge's substantive, *ex parte* communication with jury.

    III.    The verdict is against the great weight of the evidence because the victims' testimony was not credible (argument from direct appeal brief).

    IV.    The verdict is against the great weight of the evidence because the victims made inconsistent statements (argument from motion for relief from judgment).

    V.    Ineffective assistance of trial counsel as raised on direct appeal (appeal brief issues 3 and 4).

    VI.    Ineffective assistance of trial counsel as raised in post-conviction motion (argument from motion for relief from judgment, issue 3).

    VII.    Ineffective assistance of appellate counsel in failing to raise issues presented in motion for relief from judgment.

(Pet., ECF No. 1, PageID.6-15.) Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are procedurally defaulted or otherwise without merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual Allegations

The Michigan Court of Appeals provided a concise summary of the facts underlying Petitioner's convictions:

> The three alleged victims all report that incidents of sexual abuse happened when defendant was in a dating relationship and living with their mothers. The first two victims—sisters—were [respectively] nine and twelve years of age at the time the offense happened, in 2002. The third victim reports being sexually assaulted by defendant in 2006, when she was nine years of age.

(Mich. Ct. App. Op., ECF No. 8-10, PageID.1155.) Victim KR was nine when Petitioner, KR's mother's live-in boyfriend, first accosted her. (Trial Tr. II, ECF No. 8-5, PageID.693.) She was sitting in a recliner watching television. (*Id.*) Petitioner began rubbing her leg. (*Id.*, PageID.697-698.) He worked his way up and slipped his hand between her shorts and underwear. (*Id.*) He then began to rub her vagina with his fingers. (*Id.*) Petitioner did the same thing again about a

2

year later. (*Id.*, PageID701-703.) Those two instances formed the basis for Petitioner's CSC-II charges.

KR's sister EM testified that one night, when she was twelve, she was sleeping on the family room floor. (*Id.*, PageID.752-765.) Petitioner approached her, fondled her breasts, and eventually penetrated her vagina with his finger. (*Id.*) Petitioner's digital penetration of EM's vagina forms the basis for one of the CSC-I charges.

LT testified that she and Petitioner, her mother's live-in boyfriend, were sitting in a chair together watching television when Petitioner began to rub her shoulders and back. (*Id.*, PageID.852-863.) Eventually Petitioner put his hands in LT's pants and began "feeling around." (*Id.*, PageID.856.) He used a finger to penetrate her vagina. (*Id.*, PageID.856, 862-863.) Petitioner's digital penetration of LT's vagina forms the basis for the other CSC-I charge.

In addition to hearing testimony from the victims, the jurors heard testimony from the victims' mothers, LT's sister, LT's friend, Dr. Stephen Guertin (an expert in pediatric critical care and child abuse), and police officers who had participated in the investigations of the sexual abuse allegations. Petitioner did not testify.

The jury deliberated for three days before returning their verdicts. During deliberations there were frequent communications between the jury and the court. Those communications were memorialized in a note or on the record. The evening before the jury returned its verdicts, the trial judge received a telephone call from a trusted source who informed him that the prosecutor intended to file a grievance with the Judicial Tenure Commission because of the judge's *ex parte* communications with the jury. The prosecutor disclaimed any such intention or any knowledge of *ex parte* communications between the judge and the jury. None of the parties were aware of any *ex parte* communication that might serve as grounds for such a

3

grievance. The trial judge mentioned one incident where he communicated with a juror outside the presence of counsel:

> Now the truth of the matter is the only time I've talked to the jury during this entire trial was I went in there and got a cup of coffee yesterday, or a cup of water when they were on a break late yesterday afternoon and juror number 12, Ms. Pugh, who is 75 years old, as she announced during voir dire, said she couldn't hear, has to, you have to do something about the recording system. And I think it related to the playing of, according to my recorder, Terri Slade, and my law clerk who overheard that inquiry—I said it's, I said something like, it's new, and walked away.

(Trial Tr. V, ECF No. 8-8, PageID.1118.)

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals raising four issues:

1. Defendant is entitled to a new trial where the verdict is against the great weight of the evidence and it would be a denial of due process and a miscarriage of justice to allow defendant's convictions to stand.

2. Defendant was deprived of his state and federal constitutional due process right to a fair trial when the prosecutor during closing argument improperly shifted the burden of proof and indirectly commented on [defendant's] silence.

3. Alternatively, defendant's Sixth Amendment right to the effective assistance of counsel was violated by trial counsel's failure to object to the prosecutorial misconduct.

4. Defendant's Sixth Amendment right to a fair trial was violated when the trial court failed to conduct an evidentiary hearing on juror misconduct to determine whether any of the jurors improperly communicated with anyone during deliberations; defense counsel was ineffective for not moving for a mistrial and for not asking the judge to question the jurors, or to disclose the identity of the caller; defendant is entitled to a remand.

(Pet'r's Appeal Br., ECF No. 8-10, PageID.1237.) By per curiam opinion issued March 25, 2014, the Michigan Court of Appeals rejected Petitioner's appellate issues.

Petitioner raised the same four issues in his pro per application for leave to appeal to the Michigan Supreme Court. He also raised a new issue regarding the jury instructions. (Pet'r's

4

Appl. for Leave to Appeal, ECF No. 8-11, PageID.1323-1325.)  The Michigan Supreme Court denied leave by order entered September 5, 2014.

Petitioner then returned to the trial court and filed a motion for relief from judgment.  Petitioner raised four issues:

5. Defendant was denied his state and federal constitutional rights to counsel and due process of law and must be granted a new trial, where the trial court abused its discretion when it had an ex parte communication with the jury outside of the presence of counsel and defendants.

6. The evidence is insufficient to sustain defendant's convictions of CSC I and II; alternatively, the verdict is against the great weight of the evidence and it would be a denial of due process and a miscarriage of justice to allow defendant's convictions to stand.

7. The defendant was denied his Sixth Amendment right to the effective assistance of trial counsel when trial counsel failed to object and move for a new trial due to Judge Osterhaven's substantive ex parte communication with [the] jury and the verdict [is] against the great weight of the evidence.

8. The defendant was denied his Sixth Amendment right to the effective assistance of counsel on appeal, and his right to due process of law, when appellate counsel failed to effectively recognize and argue issues of facts and merit on appeal.

(Br. in Supp. of Mot., ECF No. 8-12, PageID.1355-1356.)  By opinion and order dated July 13, 2015, the Eaton County Circuit Court denied Petitioner's motion.  (Op. and Order, ECF No. 8-13.) With regard to the first two issues (issues number 5 and 6 above), the court denied the motion because Petitioner had raised the issues on direct appeal and the issues had been decided against him.  (*Id.*, PageID.1435.)

Because Petitioner intended his "ex parte communication" issue (issue 5 above) to address a different communication than that addressed on direct appeal, the trial court reviewed and rejected Petitioner's argument as factually unfounded.  (*Id.*, PageID.1435-1436.)  The trial court also rejected Petitioner's ineffective assistance of counsel claims because the issues Petitioner argued that counsel had failed to raise were meritless.  (*Id.*, PageID.1426-1437.)

5

Petitioner sought leave to appeal the trial court's decision in the Michigan Court of Appeals and then the Michigan Supreme Court. Those courts denied leave by orders dated February 24, 2016, and November 30, 2016, respectively. (Mich. Ct. App. Order, ECF No. 8-14, PageID.1440; Mich. Order, ECF No. 8-15, PageID.1500.) Petitioner then filed the instant petition.

II.  AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state

court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III. <u>Great Weight of the Evidence/ Sufficiency (Habeas Issues III and IV)</u>

Petitioner's challenges regarding the weight and sufficiency of the evidence against him are premised upon inconsistencies in the stories each victim told over time. The Michigan Court of Appeals found Petitioner's argument unconvincing:

> "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). A new trial on this ground is generally permissible only when the evidence does not reasonably support the verdict, and the verdict was "more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. However, the trial court may not normally grant a motion for a new trial on the basis of credibility determinations because "the trial court may not substitute its view of the credibility" for that of the jury. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). The jury is responsible for determining questions of credibility. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). An appellate court should likewise not interfere with the jury's role in determining credibility and weight of the evidence. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992). The testimony of a victim in a CSC case need not be corroborated by other evidence to support a conviction. MCL 750.520h; *People v Phelps*, 288 Mich App 123, 132; 791 NW2d 732 (2010).
>
> As defendant acknowledges, the instant case "turned solely on the credibility of the complainants." And the jury is responsible for determining what inferences to draw from the evidence and how much weight to give them. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A defendant's view of witness credibility is not itself a basis for the trial court to grant a motion for a new trial, given the duty to defer to the jury's factual determinations. *Lemmon*, 456 Mich at 642-643.
>
> The case involved three young victims. K.R. testified that defendant fondled her vagina on two separate occasions. E.M. testified that defendant touched her breasts and inserted a finger into her vagina. L.T. testified that defendant inserted a finger into her vagina. Although there were inconsistencies in the testimony concerning some of the details, the accounts of sexual assault to which each victim testified were consistent. Again, a victim's testimony is sufficient on its own to support a CSC conviction. *Phelps*, 288 Mich App at 132. As stated in MCL 750.520h, "[t]he testimony of a victim need not be corroborated in prosecutions" for criminal sexual conduct. The minor inconsistencies of which defendant makes issue did not rise to the level whereby the verdict must be deemed to have depended on testimony that was "patently incredible or defies physical realities," nor were the complaining witnesses' accounts "seriously impeached and the case marked by uncertainties and discrepancies." *Lemmon*, 456 Mich at 643-644 (internal quotation marks and citations omitted). For these reasons, the trial court did not commit plain error by

8

>declining sua sponte to entertain a motion for a new trial predicated on the great weight of the evidence. *See Carines*, 460 Mich at 763-764.

(Mich. Ct. App. Op., ECF No. 8-10, PageID.1156.)

The assertion that the verdict was against the great weight of the evidence does not state a ground for habeas corpus relief. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id.* at 133 n.8. As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10–cv–1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08–cv–642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review."). Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdict was not against the great weight of the evidence is final.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This

9

standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner has not overcome that hurdle. His challenge rests entirely on questioning the credibility of the victims. He essentially asks the Court to turn the *Jackson* standard on its head. He invites the Court to view the evidence in a light that favors him, instead of the prosecution, and he asks the Court to invade the jury's province by reaching the Court's own conclusions with regard to the victims' credibility. That would be contrary to clearly established federal law.

Although the Michigan Court of Appeals did not directly address the sufficiency of the evidence, its determinations with regard to the weight of that evidence dictate the conclusion that the evidence was sufficient. Those determinations are not contrary to or inconsistent with the *Jackson* standard. Moreover, the factual determinations regarding the evidence are entirely reasonable on this record. Accordingly, Petitioner is not entitled to habeas relief on these issues.

IV.    *Ex Parte* Communications (Habeas Issues I and II)

On direct appeal, the focus of Petitioner's complaint regarding *ex parte* communications was the communication between the judge and a juror that was implicit in the telephone report that the prosecutor intended to file a grievance with the Judicial Tenure Commission. The Michigan Court of Appeals concluded first that Petitioner's counsel had waived any objection to the trial court's disinclination to investigate the matter further. (Mich. Ct. App. Op., ECF No. 8-10, PageID.1158-1159.) But the appellate court went on to say that even in the absence of that waiver "[n]o relief would be warranted . . . ." (*Id*., PageID.1159.)

The only *ex parte* communication disclosed on the record is the judge's admission that, in response to a complaint regarding the sound system by a single juror, the judge had noted that the system was new. (Trial Tr. V, ECF No. 8-8, PageID.1118.) That was the only *ex parte* communication found by the Michigan Court of Appeals. (Mich. Ct. App. Op., ECF No. 8-10, PageID.1158.) That communication was entirely innocuous.

As noted by the Supreme Court in *Rushen v. Spain*, 464 U.S. 114 (1983):

> [W]e have previously noted that the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial. The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be

11

> harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice.

*Rushen*, 464 U.S. at 118-19 (footnote omitted); *see also United States v. Gagnon*, 470 U.S. 522, 526 (1985) ("'[Th]e mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right.'"). The substance of the communications and their effect on juror impartiality are questions of historical fact entitled to a presumption of correctness. *Rushen*, 464 U.S. at 120. Petitioner offers no evidence, much less clear and convincing evidence, to overcome the Michigan Court of Appeals' determinations with regard to the substance of the *ex parte* communication and the absence of any impact on juror impartiality. Accordingly, Petitioner is not entitled to habeas relief with respect to that allegedly improper *ex parte* communication.

In Petitioner's motion for relief from judgment, he attacked a different allegedly improper *ex parte* communication between the judge and the jury. Petitioner maintains that the judge communicated with the jury, off the record and outside the presence of Petitioner, the prosecutor, or defense counsel, in response to a question from the jury regarding the definition of "penetration."

The trial court would not consider the claim because the issue regarding *ex parte* communications had been raised and decided against Petitioner on his direct appeal. Nonetheless, the trial court scoured the record in an attempt to find some factual support for Petitioner's proposition. The court found none:

> Petitioner alleges that the trial court judge answered this question directly to the jury outside the presence of Petitioner and his counsel. However, upon review of the transcript, this allegation is inaccurate. The trial court judge stated on the record that he provided [the jury's note regarding the definition of "penetration"] to both attorneys almost immediately to see how they were going to handle it. Transcript, Vol. IV of V, p 4. The trial court judge responded to the jury's question by typing a jury instruction after receiving feedback from the prosecutor and Petitioner's trial counsel. Transcript, Vol. III of V, p 150. The record is clear that both attorneys

12

> saw a copy of the trial court's jury instruction. Accordingly, the Court finds that there was no improper communication between he trial court judge and the jury.

(Eaton Cty. Cir. Ct. Op. and Order, ECF No. 8-13, PageID.1436.) The trial court's factual determinations are entitled to a presumption of correctness. Petitioner offers no evidence to overcome that presumption. Because Petitioner's challenge is factually unfounded, he is not entitled to habeas relief with regard to the penetration-instruction *ex parte* communication.

> V. Ineffective Assistance of Trial and Appellate Counsel
> (Habeas Issues V, VI, and VII)

Finally, Petitioner contends his trial and appellate counsels were ineffective. Petitioner claims trial counsel was ineffective for failing to object to prosecutorial misconduct, for failing to pursue the *ex parte* communication issue as raised on appeal or in Petitioner's motion for relief from judgment, and for failing to seek a new trial where the verdict was against the great weight of the evidence. Petitioner claims that his appellate counsel was ineffective for failing to raise the *ex parte* communication issue that Petitioner raised in his post-judgment motion and for missing some witness inconsistencies when making the "great weight" argument.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

13

decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals addressed Petitioner's direct appeal complaints about his trial counsel as follows:

> Finally, defendant argues that defense counsel was ineffective for failing to object to the alleged prosecutorial misconduct, and also for failing to demand a full investigation into the alleged extraneous influence. But, as discussed, defendant has failed to provide evidence of either prosecutorial misconduct or an extraneous influence on the jury. Declining to raise a futile objection or otherwise advance a meritless position does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Because defendant builds his ineffective assistance argument on defense counsel's disinclination to

> raise objections over matters we have determined were not error in the first instance, his claim of ineffective assistance cannot stand.

(Mich. Ct. App. Op., ECF No. 8-10, PageID.1159.) The trial court followed suit with respect to the ineffective assistance of trial counsel claims Petitioner raised in his post-judgment motion:

> The Court further finds that Petitioner's allegation of ineffective assistance of trial counsel is without merit. Petitioner argues that his trial counsel was ineffective for failing to object to the verdict being against the great weight of evidence and for failing to object to extraneous influence or *ex parte* communication between the judge and jury.
>
> To prevail on a claim that counsel was ineffective, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair or unreliable. *People v Rodgers*, 248 Mich App 702, 714 (2001). It is presumed that the assistance of counsel is effective, and a defendant bears a heavy burden of proving otherwise. *People v McGhee*, 268 Mich App 600, 625 (2005).
>
> Here, as previously discussed, the Court of Appeals found that the verdict was not against the great weight of the evidence, and this Court found that there was no improper communication between the trial court judge and jury. Declining to raise a futile objection or otherwise advance a meritless position does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201 (2010). Accordingly, [Petitioner's] counsel's performance did not fall below an objective standard of reasonableness. Therefore, Petitioner fails to establish entitlement to relief for the allegation of ineffective assistance of trial counsel.

(Eaton Cty. Cir. Ct. Op. and Order, ECF No. 8-13, PageID.1436-1437.)

Although the Michigan Court of Appeals and the trial court applied state precedent in determining whether Petitioner's trial counsel was effective, the standard employed was essentially identical to *Strickland*. Thus, it cannot be said that the state courts used the wrong standard. Moreover, the state courts applied the standard reasonably. The determination that counsel's performance did not fall below an objective standard of reasonableness when counsel failed to raise meritless issues is not contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law with regard to constitutionally ineffective assistance of counsel.

Accordingly, Petitioner is not entitled to habeas relief with respect to his claim that trial counsel rendered ineffective assistance.

Petitioner's complaints about appellate counsel fare no better. The trial court rejected Petitioner's claims:

> Lastly, the Court finds that Petitioner's allegation of ineffective assistance of appellate counsel also fails to establish entitlement to relief. Ineffective assistance of appellate counsel claims are reviewed under the same test as ineffective assistance of trial counsel claims. *People v Uphaus*, 278 Mich App 174, 186 (2008). Appellate counsel is not ineffective for failing to raise a meritless argument on appeal. *People v Hardy*, 494 Mich 430,445 (2013).
>
> Here, Petitioner specifically argues that his appellate counsel was ineffective for failing to adequately argue the following: (1) the verdict was against the great weight of the evidence, (2) the trial court judge improperly communicated with the jury, and (3) his trial counsel was ineffective. These issues were raised by Petitioner's appellate counsel, but each issue was decided against Petitioner. The Court finds that Petitioner's appellate counsel's performance did not fall below an objective standard of reasonableness, and Petitioner has not demonstrated that there would have been a different result on appeal had his appellate counsel argued differently. Accordingly, Petitioner's appellate counsel was not ineffective.

(Eaton Cty. Cir. Ct. Op. and Order, ECF No. 8-13, PageID.1437-1438.) The trial court's reasoning is unassailable. Petitioner's appellate counsel cannot be faulted for failing to raise meritless issues. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The state court's determinations are not contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief with respect to his claim that appellate counsel rendered ineffective assistance.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

16

appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated:  October 11, 2018                           /s/ Ray Kent
                                                   United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).